**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| _____ ) | |
| IN RE LINERBOARD ANTITRUST ) | MDL No. 1261 |
| LITIGATION ) | |
| _____) | |
| ) | |
| THIS DOCUMENT RELATES TO: ) | |
| Civil Action Numbers 98-5055 and 99-1341 ) | |
| ) | |
| _____) | |

**DUBOIS, J.**                                                                                    **JULY 14, 2008**

## TABLE OF CONTENTS

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.     BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        A.    Other Pending Motions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        B.    Peoples's Petition for Writ of Mandamus . . . . . . . . . . . . . . . . . . . . . . . . 6

        C.    Recusal Motions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

              1.    Langer's Role In the Linerboard Antitrust Class Action . . . . . . . . . . . . . 6

              2.    The Linerboard Class Action Settlement and Fee Allocation . . . . . . . . . . 7

              3.    Peoples' Lawsuit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III.    JURISDICTION OVER CIVIL ACTION NO. 04-2785 . . . . . . . . . . . . . . . . . . . . . . 10

IV.     LAW OF RECUSAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        A.  28 U.S.C. § 455(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        B.  28 U.S.C. § 455(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        C.  Sections 455(a) and 455(b)(1) and the Extrajudicial Source Doctrine . . . . . . . . . 14

V.      DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

A.  Appointment of Howard Langer as Liaison Counsel in <u>In re Linerboard</u> . . . . . . . . . <u>16</u>

B.  Judicial Rulings, Practices, and Other Actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>20</u>

    1.  Decisions and Actions By the Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>20</u>

    2.  Alleged Delay and Inaction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>22</u>

C.  Statements and Actions by Langer and Others . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>22</u>

VI.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <u>**24**</u>

## MEMORANDUM

### I.   INTRODUCTION

Plaintiff, John F. Peoples ("Peoples"), filed a Motion to Recuse under 28 U.S.C. §§ 455(a) and 455(b) on May 12, 2008.  A Supplemental Motion to Recuse was filed on July 5, 2008.  The Motions seek "an Order by the Court Recusing the Honorable Jan E. DuBois from acting in the future in a judicial capacity in the above captioned case . . . ."  (Pl.'s Mot. to Recuse 2.)  They are based, *inter alia*, on "an appearance of bias and partiality resulting from" an alleged "special relationship" between Howard Langer, an attorney in In re Linerboard Antitrust Litigation,[1] and the Court.   (Pl.'s Mot. to Recuse ¶ 1; Pl.'s Br. in Supp. of Mot. ¶ 31.)  According to the Motions, the alleged special relationship arises out of the appointment of Howard Langer, Esquire ("Langer"), as liaison counsel in the In re Linerboard Antitrust Litigation, MDL 1261. (Pl's Mot. to Recuse ¶ 1.)   In the proposed Order attached to the Motion to Recuse, Peoples seeks the reassignment of Civil Action No. 04-2785, to another judge of this Court.  For the reasons stated below, plaintiff's Motion to Recuse and Supplemental Motion to Recuse are denied.

### II.  BACKGROUND

Currently before the Court, in addition to the pending Motions to Recuse, are numerous Motions relating to a dispute between Peoples, an attorney, and Howard Langer ("Langer") over a referral fee in the underlying Linerboard Antitrust Litigation, MDL 1261.  After the Linerboard class action was settled, Peoples filed an action against Langer in the Court of Common Pleas of

---

[1]  Howard Langer was appointed liaison counsel for the class-action plaintiffs in In re Linerboard Antitrust Litigation, MDL No. 1261, by Case Management Order dated November 9, 2000.  The relationship between Peoples v. Langer and In re Linerboard is discussed in the Background section of this Memorandum.

3

Philadelphia County in which he sought a referral fee.  That action was removed to federal court and docketed as Civil Action No. 04-2785.  It was settled for $2.92 million following extensive conferencing before United States Magistrate Judge Thomas J. Rueter.  The case was dismissed with prejudice on November 16, 2004, by agreement of the parties pursuant to Local Civil Rule 41.1(b).

The proposed order appended to the Motion to Recuse provides that "case Number 04-cv-2785 and all associated Pleadings and actions taken by the Court are re-assigned to the Clerk of the United States District Court for the Eastern District of Pennsylvania for the purpose of re-assignment to another Jurist within the Court."  What Peoples seeks is recusal in a case that was dismissed almost four years ago.  The only pending case involving Peoples - the case in which all of the Motions were filed, or should have been filed - is In re Linerboard Antitrust Litigation, MDL 1261.

A.      **Other Pending Motions**

The first filed of the other pending motions is Howard Langer's Motion for an Order Holding John Peoples, Esquire in Contempt, Imposing Disciplinary Sanctions Upon Him, and Referring his Behavior to Chief Judge Bartle for an Order to Show Cause Why He Should Not Be Suspended From Practice and Request for Expedited Hearing.  Hearings were held on that Motion on March 16, 2007, May 3, 2007, and May 4, 2007.  On February 22, 2008, Langer filed a Second Motion for an Order to Show Cause Why John Peoples and the Law Office of John Peoples Should Not Be Held In Further Contempt for Initiating a Law Suit in Delaware County In Violation of the All Writs Act Injunction.  Five motions pertaining to the initial Motion for Contempt are also before the Court: (1) Motion of Howard Langer, Esquire, and Langer & Grogan, P.C. to Stay the Peoples's Action; (2) John Peoples' Motion to Dismiss the

Complaint[2] Pursuant to Federal Rule of Civil Procedure Rule 12(b)(1); (3) John Peoples' Motion to Dismiss and Reference to a TRO Which Was Entered Improperly After the Case Was Dismissed With Prejudice;[3] (4) a Cross Motion by Howard Langer to Strike Peoples' Proposed Findings of Fact, Conclusions of Law and the Memorandum of Law in Support of the Motion to Dismiss; and, (5) John Peoples's Motion to Compel.

This Memorandum covers Peoples's recusal motions.  The Court will rule on all other Motions in a separate opinion.  Suffice it to say for purposes of this Memorandum that the initial Motion for Contempt arises out of an allegedly threatening telephone message left by Peoples on Langer's voicemail in violation of agreed-upon restraining orders which prohibited Peoples from contacting Langer.  The allegedly threatening telephone message related to Peoples's displeasure with the $2.92 million settlement of his claim against Langer.  That part of the initial contempt motion which seeks a referral of Peoples's behavior to Chief Judge Bartle for an order to show cause why he should not be suspended from practice is based on the alleged threatening telephone call and the telephone calls from Peoples that led to the issuance of the agreed-upon restraining orders.  Langer also argues that disciplinary sanctions and referral to Chief Judge Bartle are appropriate because, during the Contempt Hearing, Peoples falsely "testified to serious judicial improprieties" by the Court.  (Lead Counsel's Mem. on Potential Disciplinary Violations, Document No. 924, at 3.)  The remaining Motions relate to Peoples's claim that this Court lacked jurisdiction over his fee dispute with Langer, Civil Action No. 04-2785.  A more

---

[2] There is no "complaint" currently before the Court in this matter.  The Peoples motions to dismiss all pertain to the Motion for Contempt.

[3] Peoples' counsel, Frank Marcone, incorrectly filed these motions in Civil Action No. 04-2785, rather than in MDL No. 1261.  By Order dated June 1, 2007, the Court directed the Clerk of Court to correctly docket Peoples' filings in MDL No. 1261.

detailed statement of the facts relating to all such issues and the Court's ruling on all such issues will be included in the separate opinion.

**B.    Peoples's Petition for Writ of Mandamus**

On August 30, 2007, Peoples filed a Petition for Writ of Mandamus in the Court of Appeals for the Third Circuit.  In that Petition, Peoples sought an order declaring that this Court had no jurisdiction over the fee dispute between Peoples and Langer, and vacating all prior orders issued in that case, Civil Action No. 04-2785.  The Petition for Writ of Mandamus was denied by Order of the Court of Appeals dated October 16, 2007.  A Petition for Rehearing Before the Court En Banc was thereafter denied by Order dated February 12, 2008.  No opinions were written by the Court of Appeals in connection with those Orders.

**C.    Recusal Motions**

It is necessary to detail some of the history of the tangled dispute between Peoples and Langer in order to put the recusal motions in context.  A summary of that history follows:

**1.    Langer's Role In the Linerboard Antitrust Class Action**

By Practice and Procedure Order issued October 4, 2000, counsel for each group of parties whose interests were similarly aligned were directed to designate liaison counsel, subject to the approval of the Court.  At a case management conference held on November 9, 2000, Langer was designated by counsel for the plaintiff class as liaison counsel for the class.  By Order dated November 9, 2000, the Court approved that appointment and the appointment of Ralph G. Wellington and Sherry A. Swirsky as liaison counsel for defendants.  The duties of liaison counsel were set forth in the Court's October 4, 2000 Practice and Procedures Order, paragraph 7, as follows:

Liaison counsel shall be authorized to receive orders and notices from the Court

on behalf of all parties within their liaison group and shall be responsible for the preparation and transmittal of copies of such orders and notices to the parties in their liaison group. Liaison counsel shall be required to maintain complete files with copies of all documents served upon them and shall make such files available to parties within their liaison group upon request. Liaison counsel are also authorized to receive orders and notices from the Judicial Panel on Multidistrict Litigation pursuant to Rule 8(e) of the Panel's Rules of Procedure on behalf of all parties within their liaison group and shall be responsible for the preparation and transmittal of copies of such orders and notices to the parties in their liaison group.

(Practice and Procedures Order of Oct. 4, 2000, ¶ 7.)

The designation and appointment of liaison counsel and the duties of liaison counsel set forth above were all in accordance with the *Manual for Complex Litigation*, 3d, issued by the Federal Judicial Center.

## 2.    The <u>Linerboard</u> Class Action Settlement and Fee Allocation

On March 21, 2004, the Court granted final approval of the last two partial settlements of the class-action component of MDL 1261. <u>In re Linerboard Antitrust Litig.</u>, 292 F. Supp. 2d 631 (E.D. Pa. 2003). With the Court's approval of these "settlements, all claims in the class action were resolved for a total of $202,572,489." <u>In re Linerboard Antitrust Litig.</u>, 2004 WL 1221350, *2  (E.D. Pa. June 2, 2004).

On June 2, 2004, the Court awarded "a counsel fee of 30 percent of the total settlements of $202,572,489 ("Settlement Fund") to all counsel *with allocations to specific firms to be made by liaison counsel, Howard Langer, Esquire . . . .*" Order of June 2, 2004 (emphasis added); <u>see also</u> <u>In re Linerboard Antitrust Litig.</u>, 2004 WL 1221350, *2 (E.D. Pa. June 2, 2004) (concluding "that consideration of the seven <u>Gunter</u> factors counsels in favor of awarding petitioners their

requested fee").  Langer allocated two million dollars to Peoples for his contribution to the case.[4]

Peoples, May 3, 2007 Tr. at 27.  According to Peoples, he "made it very clear [to Langer] that I

[Peoples] was going to get very angry if he didn't come up with more money."  Id.

By Order dated June 4, 2004, the Court amended the Order of June 2, 2004 to include,

inter alia, the following language: "the Court RETAINS jurisdiction over this case including

jurisdiction over the Settlement Fund and its distribution, as well as all issues relating to the fees

and costs of counsel in this action."  In re Linerboard Antitrust Litig., 2004 WL 1240775, *1

(E.D. Pa. June 4, 2004).  The Court has on several other occasions explicitly retained jurisdiction

over matters related to the distribution of the Settlement Fund.  See, e.g., In re Linerboard

Antitrust Litig., 333 F. Supp. 2d 343, 344 (E.D. Pa. 2004) ("The Court retains continuing

jurisdiction over this matter including jurisdiction over the Settlement Fund and its distribution,

the Funds to be distributed pursuant to this Order, as well as all issues relating to the fees and

costs of counsel in this action.").

### 3.    Peoples' Lawsuit

On June 23, 2004, Peoples filed a Complaint in the Court of Common Pleas of

---

[4] As the Court explained in In re Linerboard Antitrust Litig., 2004 WL 1221350 (E.D. Pa.
June 2, 2004 ), Langer

> was approached by an attorney representing a purchaser of boxes from Stone who asked
> if liaison counsel would research the possibility of bringing an action on behalf of
> purchasers of corrugated boxes from Stone.  That lawyer, John Peoples, had approached
> other antitrust lawyers with his client's claim but they all had declined to pursue the
> matter.  Liaison counsel concluded that In re Sugar Industry Antitrust Litig., 570 F.2d 13,
> 19 (3d Cir. 1978) provided a viable, if unused (in the class action context), exception to
> Illinois Brick under which suit could be instituted against Stone.

Id. at *6.

Philadelphia County.  In his Complaint, Peoples alleged that he was entitled to four million

dollars in attorney's fees from the settlement of the box class-action component of MDL 1261, as

well as punitive damages and attorney's fees.  Peoples' Compl. ¶ 49.  He asked the court to order

Langer "to, first, escrow $6 million pending the final outcome of the litigation and . . . upon such

final outcome of the litigation, to pay over to Plaintiff said $6 million . . . ."  Peoples' Compl.

¶ 67.

On June 24, 2004, Langer removed the <u>Peoples</u> case to the United States District Court

for the Eastern District of Pennsylvania.  The Notice of Removal stated that

> Plaintiff's Complaint seeks a constructive trust on attorneys' fees awarded in a class
> action entitled In re Linerboard Antitrust Litigation, MDL No. 1261.  Plaintiff has also
> sought a preliminary and permanent injunction with respect to such fees. The allocation
> of those attorneys' fees is currently pending in this Court before the Honorable Jan E.
> DuBois.  This Court has and is currently exercising jurisdiction over the res that is the
> subject matter of the constructive trust and injunction sought by plaintiff, namely, the
> common fund generated by the Linerboard settlements.

Notice of Removal ¶2.  This case was captioned <u>John F. Peoples v. Howard Langer, Esq. and</u>

<u>Langer & Grogran, P.C.</u>, Civil Action No. 04-2785.

By Order dated July 6, 2004, issued pursuant to the All Writs Act ("All Writs Act

Injunction"), the Court enjoined "all attorneys who participated in any way in MDL 1261

including, but not limited to, John F. Peoples, Esquire, and all persons acting in their behalf . . .

from taking any further action relating to the allocation of fees in MDL 1261, or the action of

liaison counsel in connection therewith, in any court or forum other than the United States

District Court for the Eastern District of Pennsylvania."[5]  The Court stated that the injunction

---

[5] The order was without prejudice "to the right of John F. Peoples, Esquire, or any other
party to seek a remand of any case pending in this District which concerns the allocation of
counsel fees in MDL 1261, or the actions of liaison counsel in connection therewith."  Order of
July 6, 2004.

was "necessary to preserve the Court's jurisdiction over all matters relating to the award and allocation of counsel fees in MDL 1261." Order of July 6, 2004 (citing In re Synthroid Mktg. Litig., Civil Action No. 97-6017 (N.D. Ill. Aug. 22, 2003)).

By Order dated September 27, 2004, upon the joint request of the parties for mediation, the Court referred Peoples v. Langer, Civil Action No. 04-2785, to United States Magistrate Judge Thomas J. Rueter for settlement conferences. After several conferences before Judge Rueter, Peoples and Langer reached a settlement agreement on December 22, 2004. ("Settlement Agreement"). The Settlement Agreement provided that, "[i]n the full and final settlement of Mr. Peoples' claims set forth in the Action against Mr. Langer . . . , Mr. Langer shall cause to be paid to Mr. Peoples from the amount awarded as counsel fees in MDL 1261 . . . the sum of $2,940,000." (Settlement Agreement ¶ 2.) The Settlement Agreement also provided as follows: "Mr. Peoples specifically states that, notwithstanding a statement he made concerning a possible disciplinary complaint against Mr. Langer, he neither has nor knows of any ground for such a complaint." (Settlement Agreement ¶ 6.) By Order dated November 16, 2004, "it having been reported that the issues between the parties in the above action have been settled," the Court dismissed Peoples v. Langer, No. 04-2785 with prejudice pursuant to Rule 41.1(b) of the Local Rules of Civil Procedure of this Court.

## III.    JURISDICTION OVER CIVIL ACTION NO. 04-2785

In his pending Motions to Dismiss, Peoples argues that this Court lacks jurisdiction over his fee dispute case against Langer, Civil Action No. 04-2785. Because the jurisdiction issue will be covered in a separate memorandum deciding all of the other pending motions, the Court does not deem it necessary to address that issue in detail in this Memorandum, except to point out the following:

The jurisdiction issue was squarely presented to the Court of Appeals in Peoples's Petition for Writ of Mandamus.  In that Petition, Peoples asked the Court, *inter alia*, to vacate all orders issued in his fee dispute case with Langer, Civil Action No. 04-2785, and remand the case to the Court of Common Pleas of Philadelphia County on the ground that this Court had no jurisdiction over the fee dispute.  The Petition was denied by Order dated October 16, 2007, and a Petition for Rehearing Before the Court En Banc was denied on February 12, 2008.  Although no opinions were written by the Court of Appeals, those rulings, in essence, affirmed this Court's determination that it had jurisdiction over the Peoples fee dispute.

A reading of Peoples's filings would leave one with the impression that Peoples's fee dispute with Langer affected only Langer, and had nothing to do with the fee awarded by the Court in the <u>Linerboard Antitrust Litigation</u>, MDL 1261, and the attorneys to whom Langer allocated portions of the fee, but that is not so.  To the contrary, Peoples's Complaint asked the Court to order Langer "to, first, escrow $6 million pending the final outcome of the litigation and . . . upon such final outcome of the litigation, to pay over to Plaintiff said $6 million . . . ." Peoples's Compl. ¶ 67.  At the time Peoples's Complaint was filed, that precise issue - the allocation of attorneys fees awarded in the class action component of MDL 1261- was before this Court.

The Court concluded that supplemental or ancillary jurisdiction over the Peoples's fee dispute was necessary to protect the continued integrity of the Court.  That determination was based on the well established principle that federal courts may assert "ancillary" or "supplemental" jurisdiction for "two separate, though sometimes related purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its

11

proceedings, vindicate its authority, and effectuate its decrees." <u>Kokkonen v. Guardian Life Insurance</u> <u>Co. of America</u>, 511 U.S. 375, 380 (1994).

In his Motion to Recuse, Peoples makes reference to a letter from retired Chief Judge Louis C. Bechtle in which Judge Bechtle expressed the opinion that Peoples's fee dispute should have been remanded to the Court of Common Pleas of Philadelphia County.  (Pl.'s Mot. to Recuse ¶ 11; Pl.'s Br. in Supp. Of Mot. ¶ 13.)  The short answer to that argument is that the issue of remand is not a subject on which an expert opinion is appropriate.  Moreover, and significantly, Peoples stated that he provided to Judge Bechtle only the pleadings in his case against Langer.  (Pl.'s Br. in Supp. of Mot. ¶ 13.)  That was insufficient to enable Judge Bechtle or anyone else to understand the relationship between Peoples' Complaint, filed June 23, 2004, which demanded that ten percent of attorneys fees in <u>In re Linerboard</u> be escrowed, and what was happening in <u>In re Linerboard</u> at the same time –  implementation of the Orders of June 2, and 4, 2004, directing Langer, as liaison counsel, to allocate the attorneys fee of 30% of the settlement fund to the more than 200 attorneys who participated in the case.

Finally, the Court notes that its jurisdiction in this case will end upon the termination of the class action phase of MDL No.1261.  What remains for adjudication in the class action component of MDL No. 1261 is approval of the Final Report of the Claims Administrator, and an order disposing of the excess class action settlement funds.  The Court will rule on such matters in a separate memorandum and order upon receipt of a supplemental report from the Claims Administrator.

The Court next turns to the issues presented by People's Motions for Recusal.

## IV.    LAW OF RECUSAL

### A.  28 U.S.C. § 455(a)

Section 455(a) requires a federal judge to disqualify himself "in any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  It is a "catchall disqualification provision" covering situations in which a judge can be viewed as having a "bias or prejudice" concerning a party, a relationship to a party, or an interest in the litigation.  <u>See</u> <u>In</u>

re Kensington Int'l Ltd., 353 F.3d 211, 220 (3d Cir. 2003) (citing United States v. Liteky, 510

U.S. 540, 548 (1994)).  In conducting a § 455(a) analysis, "the appearance of impropriety must

be viewed from the perspective of the objective, reasonable layperson . . . ."  In re Kensington

Int'l Ltd., 368 F.3d 289, 303 (3d Cir. 2004).  If "a reasonable man, were he to know all the

circumstances, would harbor doubts about the judge's impartiality . . . . then the judge must

recuse."  In re Prudential Ins. Co. of America Sales Practices Litigation, 148 F.3d 283, 343 (3d

Cir. 1998).

### B.  28 U.S.C. § 455(b)

In contrast to § 455(a), § 455(b) lists specific circumstances under which a judge "shall

also disqualify himself."  28 U.S.C. § 455(b)(1)-(5).[6]  One such provision, § 455(b)(1),[7] requires

---

[6]  The full text of § 455(b) reads:

[A judge] shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal
knowledge of disputed evidentiary facts concerning the proceeding;

(2) Where in private practice he served as lawyer in the matter in controversy, or a
lawyer with whom he previously practiced law served during such association as a
lawyer concerning the matter, or the judge or such lawyer has been a material
witness concerning it;

(3) Where he has served in governmental employment and in such capacity
participated as counsel, adviser or material witness concerning the proceeding or
expressed an opinion concerning the merits of the particular case in controversy;

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child
residing in his household, has a financial interest in the subject matter in
controversy or in a party to the proceeding, or any other interest that could be
substantially affected by the outcome of the proceeding;

(5) He or his spouse, or a person within the third degree of relationship to either of
them, or the spouse of such a person:

(i) Is a party to the proceeding, or an officer, director, or trustee of a party;

recusal where a judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."  28 U.S.C. § 455(b)(1).

### C.  Sections 455(a) and 455(b)(1) and the Extrajudicial Source Doctrine

In analyzing claims under §§ 455(a) and 455(b)(1), courts generally have applied what has come to be known as the "extrajudicial source doctrine."  See Liteky, 510 U.S. at 546, 549 (listing cases).  Under that doctrine, recusal is required only where "the alleged bias and prejudice . . . stem[s] from an extrajudicial source," meaning a source outside the judicial proceedings.  See id. (quoting United States v. Grinnell Corp., 384 U.S. 563, 583 (1966)).  In Liteky, a party challenged the application of the extrajudicial source doctrine to § 455(a), claiming that, under that part of the statute, recusal is required "*whenever* there exists a genuine question concerning a judge's impartiality, and not merely when the question arises from an extrajudicial source."  Id. at 552 (emphasis in original).  The Supreme Court rejected that challenge and held that the extrajudicial source doctrine applies to both §§ 455(a) and 455(b)(1).  However, the Liteky Court also clarified the reach and scope of the doctrine.  See id. at 554-55.

The Supreme Court in Liteky held that while an extrajudicial source may be a practical

----

(ii) Is acting as a lawyer in the proceeding;

(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

(iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

28 U.S.C. § 455(b)(1).

[7] Plaintiff does not state specifically which provision(s) he relies upon under § 455(b) but it appears to be § 455(b)(1).  In his Motion, he explains the difference between § 455(a) and § 455(b)(1). (Pl.'s Mot. to Recuse 14.)  He does not cite other provisions under § 455(b).

necessity for establishing prejudice or bias, "[i]t is wrong . . . to suggest, as many opinions have, that 'extrajudicial source' is the only basis for establishing bias or prejudice." Id. at 551.  The Court stated that a "favorable or unfavorable predisposition" that "springs from the facts adduced or the events occurring at trial" can also be characterized as bias or prejudice. Id.  However, to warrant recusal, that judicial "disposition" must be "so extreme as to display clear inability to render fair judgment." Id.  Put another way, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings," will constitute a basis for a bias or partiality motion only if "they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Id. at 555 (emphasis added); see also id. at 556 (rephrasing latter part of standard as requiring "deep-seated and unequivocal antagonism that would render fair judgment impossible").

"Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." Id. (emphasis in original).

The Liteky Court further stated that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion" because "in and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . ." Id. at 555.

Finally, the Liteky Court stated that even where an extrajudicial source or "factor" is implicated, recusal is not warranted unless a judge's "disposition or opinion . . . is . . . wrongful

or inappropriate, either because it is undeserved, or because it rests upon knowledge that the subject ought not to possess . . . or because it is excessive in degree . . . ."  Id. at 550.

## V.  DISCUSSION

The Court groups Peoples's arguments for recusal into three categories: (A) the appointment of Langer as liaison counsel in In re Linerboard; (B) judicial rulings, practices, and other actions throughout the course of the proceedings; and (C) statements and actions by Langer and others.

### A.  Appointment of Howard Langer as Liaison Counsel in In re Linerboard

Peoples's main argument, one that he repeats throughout his Motions and the brief in support of the Motion to Recuse, is that Howard Langer and the Court share a "close," "special," and "unacceptable" relationship.  (Pl.'s Mot. to Recuse ¶¶ 1, 2; Pl.'s Br. in Supp. of Mot., "Applicable Facts" Section, ¶ 11, 31.)  Plaintiff contends that the "relationship" "developed due" to this Court "appointing Langer as Liaison Counsel" in In re Linerboard, and that it has provided "more than the 'appearance' of bias and partiality which by statute requires recusal."  (Pl.'s Mot. to Recuse ¶ 1; Pl.'s Br. in Supp. of Mot. ¶ 5.)[8]  Moreover, plaintiff argues that as Liaison Counsel, Langer exercises "direct influence" over the Court.  (Pl.'s Br. in Supp. of Mot. ¶ 15.)  In support of this argument, plaintiff cites In re Kensington Int'l Ltd., which he claims "bears many similarities" to this case.  (Pl.'s Br. 13-14).  That statement is incorrect.

The Kensington case has absolutely no bearing on this case.  In Kensington the district court appointed "Court Appointed Consultants" to assist that court in a consolidated asbestos-

---

[8]  Arguments relating to the Court's appointment of Langer as Liaison Counsel, or the "relationship" which developed as a result of that appointment, are repeated in Pl.'s Mot. to Recuse ¶¶ 1, 2, 9, and 24(1); Pl.'s Br. in Supp. of Mot. ¶¶ 3-5; and "Applicable Facts" Section of Pl.'s Br. ¶¶ 10, 11, 15, 18, 25, 29, 30, and 50.

related bankruptcy litigation.  368 F.3d at 297.  The consultants were given very broad powers by the district court, including, among other things, the power to advise the district judge, mediate disputes, hold case management conferences, and consult with attorneys.  Id. at 308.  One consultant likened the powers that he exercised to those of a magistrate judge.  Id.  The consultants in Kensington could also be delegated authority to hear matters and to advise the Court on issues.  See Kensington, 353 F.3d at 215.

The problem in Kensington arose when it was discovered that, that at the time they were advising the district court, two of the consultants "represented a class of tort claimants in another, unrelated asbestos-driven bankruptcy and espoused views therein on the same disputed issues" that were at the core of the Kensington case.  368 F.3d at 302.  The Third Circuit determined that these consultants operated under a structural conflict of interest, and granted the creditors' petition to disqualify the district judge from further proceedings over their cases.  Id. at 303.

The Linerboard Antitrust Litigation stands in stark contrast to Kensington.  Liaison counsel for the plaintiffs and the defendants in Linerboard had virtually no power, let alone the "very broad power" that was at issue in Kensington.  They did not advise the court, mediate disputes, or hold case management conferences, and their authority was nothing like that exercised by a magistrate judge.  To the contrary, the principal role of liaison counsel in Linerboard was to act as a liaison between their groups of parties and the court, and to assist the court in case management.

Peoples claims that the Court conducted ex parte meetings with Langer in In re Linerboard or in Peoples v. Langer. That is absolutely false.  All meetings or discussions with liaison counsel which were related to In re Linerboard included all liaison counsel and,

17

significantly, any other attorneys who chose to participate.  With regard to <u>Peoples v. Langer</u>, there were no *ex parte* meetings with Langer or anyone else.

Peoples argues that the Court's appointment of Langer as liaison counsel "began the creation of an appearance of partiality and formed the basis for this Motion requiring recusal." (Pl.'s. Br. Applicable Facts ¶ 10).  That argument ignores the appointment process utilized by the Court.  Langer was designated as liaison counsel by counsel for the plaintiff class.  See Practice and Procedure Order dated October 4, 2000, ¶ 7.  The Court approved that designation by Order dated November 9, 2000.

The Third Circuit has recognized that in "cases involving allegations of bias derived from judicial proceedings," which this is, "biases . . . must be particularly strong."  <u>See</u> <u>United States v. Antar</u>, 53 F.3d 568, 574 (3d Cir. 1995) (overruled on other grounds); <u>In re Prudential</u>, 148 F.3d at 343 (same) .  For example, in <u>United States v. Antar</u>, in which court concluded that recusal was required, the court found that it was "difficult to imagine a starker example of when opinions formed during the course of judicial proceedings display a high degree of antagonism against a criminal defendant."  53 F.3d at 576.  At issue in that case was a district judge's comment at sentencing that his "object . . . from *day one*" in a securities fraud case was to "get back to the public that which was taken from it as a result of the fraudulent activities" of defendants.  <u>Id.</u> at 573 (emphasis added).  The court determined that the judge's statement required recusal under § 455(a) because, under the circumstances, a reasonable person with knowledge of the facts could conclude "that the judge had an improper goal" in the criminal proceeding.  <u>Id.</u> at 579.  Failure to recuse in that case had "the appearance of affecting the fairness and integrity of the trial."  <u>Id.</u>

In <u>Alexander v. Primerica Holdings, Inc.</u>, 10 F.3d 155 (3d Cir. 1993),  the Third Circuit

disqualified a district judge after concluding that the outcome of the underlying case "'would be shrouded [in] suspicion' if [the judge] were to continue to preside as trier of the fact[s]." 10 F.3d at 163 (quoting In re School Asbestos Litigation, 977 F.2d 764, 785 (3d Cir.1992)). Like Antar, Alexander presented particularly strong facts that could have led a reasonable person to question the judge's impartiality. The judge in Alexander, an ERISA class action, made observations "throughout the conduct of [the] proceedings," that "strong[ly] indicat[ed]" that he had prejudged the case. Id. at 164. Moreover, the judge made comments that "petitioners' witnesses may have committed perjury . . . without having heard all of the testimony . . . ." Id. Similarly, in a written opinion, the judge "accused petitioners of acting in bad faith . . . and of abusing the judicial process . . . despite an absence of record evidence." Id. Finally, in response to petitioners' motion for recusal, the judge drafted a "letter opinion" in which he "forcefully" and "personally refuted petitioners' 'incomplete or inaccurate summaries' of his comments and opinions." Id. For all of these reasons, the Court of Appeals determined that the district court judge's impartiality might reasonably be questioned. Id. at 164-65; see also id. at 165 (stating that judge's response to petition could be misinterpreted by a reasonable person as an attempt to align himself with respondents).

Unlike Antar and Alexander, Peoples presents no facts which would warrant recusal. The designation of Langer as liaison counsel by counsel for the plaintiff class in Linerboard and approval of that designation by the Court does not evidence "deep-seated favoritism or antagonism" towards any party. Liteky, 510 U.S. at 555. Nor does the Court's treatment of Peoples evidence deep-seated favoritism toward Langer or antagonism toward Peoples. Peoples does not present any evidence that the Court prejudged his claims or made statements indicating prejudgment, because there is no such evidence. Likewise, the Court has not accused Peoples of

bad acts or made any statements that could be considered accusations against him.  And, in appointing Langer as liaison counsel, the Court did not "align" itself with any party.  That appointment of Langer and that "relationship" to him provides absolutely no basis for recusal.

### B.  Judicial Rulings, Practices, and Other Actions

Plaintiff alleges that the Court has "evidenc[ed] bias" in favor of Langer through its rulings and other actions.  (Pl.'s Br. 12.)  At the outset, the Court notes that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion."  Liteky, 510 U.S. at 555.  The Supreme Court has stated that "[a]lmost invariably, [a judge's rulings] are proper grounds for appeal, not for recusal."  Id.  Moreover, the Third Circuit has held that "a party's displeasure with legal rulings does not form an adequate basis for recusal."  Securacomm Consulting, Inc. v. Securacom Inc., 224 F.3d 273, 278 (3d Cir. 2000) (citing In re TMI Litig., 193 F.3d 613, 728 (3d Cir.1999)).  With these standards in mind, the Court addresses plaintiff's arguments regarding its rulings and other actions.

### 1.  Decisions and Actions By the Court

In an Order dated July 6, 2004, upon motion by Langer for an All Writs Act injunction, the Court enjoined all attorneys who participated in any way in MDL 1261, including plaintiff, from taking "any further action relating to the allocation of fees in MDL 1261, or the action of liaison counsel in connection therewith, in any court or forum other than the United States District Court for the Eastern District of Pennsylvania."  (See Order of July 6, 2004.)  The Order explained that the injunction was necessary "to preserve the Court's jurisdiction over all matters relating to the award and allocation of counsel fees in MDL 1261." Id.  Peoples contends that the injunction "'protected' Langer from a legitimate claim" and provides "evidence requiring recusal."  (Pl.'s Br., Applicable Facts Section ¶¶ 16-17.)

Similarly, Peoples argues that a separate order which instructed all parties to file future filings under MDL No. 1261, issued on May 31, 2007, after the Peoples case was terminated, was "completely without basis," and that "[t]hat act alone would require subsequent recusal based upon bias in favor of liaison counsel." (Pl.'s Br. in Supp. of Mot. ¶ 10.)

The law on recusal does not support plaintiff's claims. Neither of the above-referenced orders displayed a "deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky, 510 U.S. at 555. The orders simply directed actions that were necessary to the Court's administration of In re Linerboard. Peoples's argument that it was appropriate to continue filing documents in Civil Action No. 04-2785 years after that action was dismissed with prejudice on November 16, 2004, is, quite simply, absurd. To the extent that Peoples disagrees with the legal bases for the Court's rulings, he may appeal to the Third Circuit. See id.

In addition to the above claims, Peoples suggests that the Court has demonstrated bias by "tak[ing] seriously" allegations of threats against Langer by plaintiff and by "attempt[ing] to cite [plaintiff]" for contempt of a Court order that has "never been made part of a record." (Pl.'s Mot. to Recuse ¶¶ 18-20.) He also asserts that the Court "permitted Langer to accuse Peoples of actions which he classified as warranting 'disbarment' but was unable to cite to an applicable violation of the Code or Professional Responsibility." (Pl.'s Br. 13.) Suffice it to say in response that the contempt motions which address those issues have not yet been decided. The Court delayed ruling on those motions in the mistaken belief that the parties would be able to resolve their dispute. It will shortly rule on all such motions and related motions in a separate opinion.

21

### 2. Alleged Delay and Inaction

Peoples also alleges that the Court's "delay" in responding to his motions demonstrates bias, or the appearance of bias, warranting recusal. (See Pl.'s Br. 17.) Specifically, he alleges that the Court has "never decided" or "addressed" his Motion for Remand, which was filed July 9, 2004 (Pl.'s Br. Applicable Facts ¶¶ 13, 21), or his Motion to Dissolve the All Writs Act Injunction, which was filed July 12, 2004 (Pl.'s Br. Applicable Facts ¶ 22). By way of proof, Peoples asserts that the alleged "lengthily [sic] delay" is inconsistent with this Chambers' "usual speed" and that the delay can only be explained by "the appearance of bias and prejudice." (Pl.'s Br. 17.) In fact, the Motions to which Peoples points have been addressed. By Order dated November 16, 2004, the Court denied those and other motions as moot, after the parties reported the case settled.

As for plaintiff's claim that recusal is warranted because, generally speaking, the Court has let his case "languish," the claim has no merit. (See Pl.'s Br., Applicable Facts ¶¶ 26, 41.) Peoples's case was settled and dismissed with prejudice under Local Civil Rule 41.1(b) on November 16, 2004. Any delay after the filing of the first contempt motion was caused by the Court's decision to give the parties an opportunity to resolve their dispute. In addition, there was delay related to the filing by Peoples of a Petition for Writ of Mandamus to the Third Circuit and, after that Petition was denied, the filing of a Petition for Rehearing which was denied.

### C. Statements and Actions by Langer and Others

Finally, Peoples bases his recusal motions on certain actions and statements made, not by this Court, but by Howard Langer. In relation to Langer, plaintiff has alleged the following:

1. That Langer "proposed that he had exclusive unilateral communications with Judge

22

DuBois through both direct telephone discussions as well as personal discussions.  He also had made it known to Peoples that his unique position with Judge DuBois will impact unfavorably upon Peoples should Judge DuBois control the dispute between Peoples and Langer over the fee owed by Langer."  (Peoples. Mot. to Recuse ¶ 9; see also Pl.'s Br. 15 (claiming that Langer has "bragged" about "exparte [sic] communications" with the Court)).

2.  That Langer "addressed himself in his pleadings" as Liaison Counsel and that "[t]hat reference alone created an appearance of bias and prejudice requiring recusal."  (Pl.'s Mot. to Recuse ¶ 18.)

3.  That Langer, in arguing that this Court had jurisdiction over the <u>Peoples</u> matter, "never cited authority for continuing control of a non litigant after all actions by the Court were closed," thus "[g]iving further appearance of bias and prejudice."  (Pl.'s Mot. to Recuse ¶ 23.)

4.  That Langer "sought 'removal' relief from Judge Dubois, with whom he admitted he enjoyed a close relationship. This alone gave rise to an appearance of partiality, warranting recusal."  (Pl.'s Mot. to Recuse, Applicable Facts ¶ 14.)

5.  That Langer has "admitted to a conflict with having Judge DuBois hear any of the issues in this case due to his close relationship with Judge DuBois."  (See Pl.'s Br., Applicable Facts ¶¶ 28-30.)

A short answer to the above claims by Peoples is that, with the exception of the reference to Langer as liaison counsel, Langer denies the allegations.  The Court had absolutely no relationship whatsoever with Langer other than that arising from the approval of his designation as liaison counsel in the <u>In re Linerboard Antitrust Litigation</u>.  Moreover, the Court played only a peripheral role in the resolution of Peoples's case against Langer.  For the most part, that case

was handled by United States Magistrate Judge Thomas J. Rueter who was successful in settling it for $2.92 million.

With respect to statements allegedly made by others, Peoples argues that "[i]t began to appear the opinions expressed by other lawyers that Judge DuBois was expressing favoritism to Howard Langer, Esquire, was correct." (Pl.'s Mot. to Recuse, p. 4, ¶ 12.)  Those other lawyers were identified by Peoples, and at an Evidentiary Hearings conducted in May, 2007, they testified under oath to the contrary.  (See May 4, 2007 Evid. Hr'g Tr. at 16, 46.)

Plaintiff's allegations relating to Langer and other individuals do not require recusal under §§ 455(a) or 455(b)(1).  The allegations reflect no "personal bias or prejudice" on the part of the Court, nor do they establish "personal knowledge of disputed evidentiary facts." 28 U.S.C. § 455(b)(1).  Similarly, the allegations do not speak to any opinion, remark or other action taken by the Court.  Moreover, it cannot be said that recusal is required under § 455(a) because a reasonable person, with knowledge of all of the facts, would not "harbor doubts about the *judge's* impartiality."  In re Prudential, 148 F.3d at 343 (emphasis added); cf. Selkridge v. United of Omaha Life Ins. Co., 360 F.3d 155, 168 (3d Cir. 2004) (explaining that a written statement by a *litigant* is of "little probative value with respect to whether a reasonable person, knowing all the circumstances, would question [the *judge's*] impartiality") (emphases added).

## VI.  CONCLUSION

Plaintiff argues that the Court's rulings, practices and other actions which occurred in the course of the In re Linerboard Antitrust Litigation warrant recusal.  In Liteky, the Supreme Court ruled that where "judicial rulings, routine trial administration efforts, and ordinary admonishments . . . to counsel and to witnesses," did not rely upon knowledge acquired outside

of judicial proceedings, and did not display a "deep-seated and unequivocal antagonism that would render fair judgment impossible," recusal was not warranted.  510 U.S. at 556.   This Court's actions have not displayed any favoritism toward Langer or antagonism toward Peoples.  Moreover, no "reasonable person, with knowledge of all the facts, would conclude that [this Court's] impartiality might reasonably be questioned." In re Kensington, 368 F.3d at 301.  Accordingly, for all of the reasons set forth in this Memorandum, plaintiff's Motion to Recuse Pursuant to 28 U.S.C. §§ 455(a) and 455(b) and Supplemental Motion to Recuse are denied.

An appropriate Order follows.