

1046

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE LINERBOARD ANTITRUST LITIGATION | ) ) ) ) |
| THIS DOCUMENT RELATES TO: Civil Action Numbers 98-5055 and 99-1341 | ) ) ) ) ) ) |

MDL No. 1261—File

**FILED**

OCT - 3 2008

MICHAEL E. KUNZ, Clerk
By _TDD_ Dep. Clerk

DUBOIS, J.                                                    OCTOBER 2, 2008

## MEMORANDUM

### I.   INTRODUCTION

Presently before the Court are Motions of Liaison Counsel Howard Langer (1) for

Reconsideration of the Order of July 15, 2008, (2) for Entry of an Order to Protect and Effectuate

This Court's Judgment and (3) Alternatively, to Stay That Portion of the Order of July 15, 2008

Providing for the Dissolution of the All Writs Act Injunction Pending Appeal (Document No.

1025, filed July 21, 2008). Three supplements from Howard Langer pertaining to the Motion for

Reconsideration are also before the Court: (1) Supplement to Motion to Reconsider the Order

Entered July 15, 2008, or Alternatively for a Stay Pending Appeal (Document No. 1026, filed

July 23, 2008); (2) Second Supplement to Motion to Reconsider the Order Entered July 15, 2008,

or Alternatively for a Stay Pending Appeal (Document No. 1027, filed July 24, 2008); and (3)

Third Supplement to Motion to Reconsider the Order Entered July 15, 2008, or Alternatively for

a Stay Pending Appeal (Document No. 1028, filed July 28, 2008). Also pending is Howard

Langer's Motion for Temporary Restraining Order and Preliminary Injunction (Document No.

1043, filed September 12, 2008).[1]

For the reasons that follow, Motion of Liaison Counsel Howard Langer for Reconsideration of the Order of July 15, 2008 is granted and the All Writs Act Injunction is amended and reinstated. In view of this ruling, Motions of Liaison Counsel Howard Langer for Entry of an Order to Protect and Effectuate This Court's Judgment and Alternatively, to Stay That Portion of the Order of July 15, 2008 Providing for the Dissolution of the All Writs Act Injunction Pending Appeal and Howard Langer's Motion for Temporary Restraining Order and Preliminary Injunction are denied as moot.[2]

## II.   BACKGROUND

The relevant facts and procedural history of the case are set forth in detail in the Court's opinions of July 14, 2008 (Document No. 1023; In re Linerboard Antitrust Litig., 2008 WL 2758167 (E.D. Pa. July 14, 2008) (denying motions to recuse)) and July 15, 2008 (Document No. 1024; In re Linerboard Antitrust Litig., 2008 WL 2758442 (E.D. Pa. July 15, 2008) (denying motion for contempt and motions to dismiss)). Accordingly, this Memorandum sets forth only the factual and procedural background necessary to resolve the motions presently before the Court.

The current motions relate to a dispute between two attorneys, John F. Peoples, Esquire,

---

[1] John F. Peoples's Second Motion to Recuse Pursuant to 28 U.S.C. §§ 455(a) and 455(b), filed in Civil Action No. 99-1341, is also pending before the Court. The Court will rule on this Motion in a separate order.

[2] Howard Langer's Motion for Entry of an Order to Protect and Effectuate This Court's Judgment asks the Court to enjoin John F. Peoples, Esquire from further prosecution of the action currently pending in the Delaware County Court of Common Pleas, Peoples v. Langer, Case No. 08-001322. The reinstatement of the All Writs Act Injunction encompasses this request and makes a separate, specific injunction unnecessary.

("Peoples") and Howard Langer, Esquire, ("Langer"), over a referral fee in the underlying

Linerboard Antitrust Litigation, MDL 1261. On April 21, 2004, the Court approved the last two

partial settlements of the class-action component of MDL 1261. Order of April 21, 2004 (Doc.

No. 366). On June 2, 2004, the Court awarded "a counsel fee of 30 percent of the total

settlements of $202,572,489 ("Settlement Fund") to all counsel *with allocations to specific firms

to be made by liaison counsel, Howard Langer, Esquire . . . ."* Order of June 2, 2004 (Doc. No.

388); In re Linerboard Antitrust Litig., 2004 WL 1221350, at *2 (E.D. Pa. June 2, 2004)

(emphasis added). Langer allocated two million dollars to Peoples for his contribution to the

case. (May 3, 2007 Hr'g Tr. 27.) Peoples stated that he "made it very clear [to Langer] that [he]

was going to get very angry if [Langer] didn't come up with more money." (Id.)

By Order dated June 4, 2004, the Court amended the Order of June 2, 2004 to include the

following language: "[T]he Court RETAINS jurisdiction over this case including jurisdiction

over the Settlement Fund and its distribution, as well as all issues relating to the fees and costs of

counsel in this action." Order of June 4, 2004 (Doc. No. 389); In re Linerboard Antitrust Litig.,

2004 WL 1240775, at *1 (E.D. Pa. June 4, 2004).

On June 23, 3004, Peoples filed a Complaint in the Philadelphia County Court of

Common Pleas, alleging that he was entitled to four million dollars in attorney's fees from the

settlement of the Box Class component of MDL 1261. (Peoples's Compl. ¶ 49.) On June 24,

2004, Langer removed the case to the United States District Court for the Eastern District of

Pennsylvania. The Notice of Removal stated that

> Plaintiff's Complaint seeks a constructive trust on attorneys' fees awarded in a class
> action entitled In re Linerboard Antitrust Litigation, MDL No. 1261. Plaintiff has also
> sought a preliminary and permanent injunction with respect to such fees. The allocation

3

of those attorneys' fees is currently pending in this Court before the Honorable Jan E. DuBois. This Court has and is currently exercising jurisdiction over the res that is the subject matter of the constructive trust and injunction sought by plaintiff, namely, the common fund generated by the Linerboard settlements.

(Notice of Removal ¶ 2.)  The case was captioned <u>John F. Peoples v. Howard Langer, Esq. and Langer & Grogran, P.C.</u>, Civil Action No. 04-2785 (E.D. Pa., removed June 24, 2004).

By Order dated July 6, 2004, pursuant to the All Writs Act ("All Writs Act Injunction"), the Court enjoined "all attorneys who participated in any way in MDL 1261 including, but not limited to, John F. Peoples, Esquire, and all persons acting in their behalf . . . from taking any further action relating to the allocation of fees in MDL 1261, or the action of liaison counsel in connection therewith, in any court or forum other than the United States District Court for the Eastern District of Pennsylvania." Order of July 6, 2004 (Doc. No. 408).  The Court stated that the injunction was "necessary to preserve the Court's jurisdiction over all matters relating to the award and allocation of counsel fees in MDL 1261." <u>Id.</u> (citing <u>In re Synthroid Mktg. Litig.</u>, No. 97-6017 (N.D. Ill. Aug. 22, 2003)).

On December 22, 2004, <u>Peoples v. Langer</u> was settled for $2.92 million following extensive conferencing before United States Magistrate Judge Thomas J. Rueter.  The case was dismissed with prejudice on November 16, 2004, by agreement of the parties pursuant to Local Civil Rule 41.1(b).  Order of Nov. 16, 2004 (Civ. Action No. 04-2785, Doc. No. 29).

On May 3, 2007, during a contempt hearing before this Court, Peoples advised the Court that he intended to relitigate the <u>Linerboard</u> counsel fee allocation. (May 3, 2007 Hr'g Tr. 44, 48 (stating "I want to open the other" case).)  Following this statement, on December 31, 2007, Peoples filed a Complaint against Langer and other <u>Linerboard</u> attorneys in the Delaware County

4

Court of Common Pleas, alleging that he was entitled to ten percent of the Box Class counsel fee awarded in Linerboard. (Peoples's Compl. ¶ 100.) On January 9, 2008, Peoples withdrew this Complaint without prejudice before serving it; Langer stated that he did not learn that the Complaint had been filed until September 8, 2008. (Langer's Notice of New Material Bearing Upon the Pending Mot. to Reconsider 2 (Doc. No. 1041, filed Sept. 9, 2008).)

Also on January 9, 2008, Peoples filed a praecipe for a writ of summons against Langer in the Delaware County Court of Common Pleas; the summons was issued on February 1, 2008, and served on Langer on February 21, 2008. Peoples v. Langer, No. 08-001322 (Del. County Ct. of C.P., filed Jan. 9, 2008). No complaint has been filed in that action.

On January 23, 2008, Peoples served twenty-one interrogatories on Langer relating to the Delaware County Court suit. On March 12, 2008, Peoples moved this Court to compel answers to the interrogatories, filing his motion in the closed federal case of Peoples v. Langer, Civil Action No. 04-2785. In response, Langer filed a Motion for an Order to Show Cause Why John Peoples and the Law Office of John Peoples Should Not Be Held in Further Contempt for Initiating a Lawsuit in Delaware County Court in Violation of This Court's All Writs Act Injunction ("Motion for Contempt") (Document No. 1019, filed March 20, 2008).

The Court ruled on Langer's Motion for Contempt and related motions on July 15, 2008. Memorandum and Order of July 15, 2008 (Doc. No. 1024); In re Linerboard Antitrust Litig., 2008 WL 2758442 (E.D. Pa. July 15, 2008). As part of that Order, the Court vacated the All Writs Act Injunction of July 8, 2004. Id. The Motion for Reconsideration and related filings that are the subject of this Memorandum and Order followed.

On September 8, 2008, Langer was served with discovery requests in the Delaware

County Court case. (See Langer's Notice of New Material Bearing Upon the Pending Mot. to Reconsider (Doc. No. 1041, filed Sept. 9, 2008).) On September 12, 2008, Langer filed a Motion for Temporary Restraining Order and Preliminary Injunction in this Court, requesting that this Court restrain Peoples from seeking to relitigate the allocation of Linerboard counsel fees in general and enjoin Peoples's prosecution of the Delaware County Court action, Peoples v. Langer, No. 08-001322 (Del. County Ct. of C.P., filed Jan. 9, 2008), in particular. (Langer's Mot. for TRO & Preliminary Injunction (Doc. No. 1043, filed Sept. 12, 2008).)

## III.   LEGAL STANDARD—MOTION FOR RECONSIDERATION

The purpose of a motion for reconsideration of an order is to correct manifest errors of law or fact, or to present newly discovered evidence. Max's Seafood Café v. Max Quinteros, 176 F.3d 669, 677 (3d Cir.1999). A prior decision may be altered or amended only if the party seeking reconsideration establishes at least one of the following grounds: (1) an intervening change in controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. Id. "Because federal courts have a strong interest in finality of judgments, motions for reconsideration should be granted sparingly." Continental Casualty Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995); see also Rottmund v. Continental Assurance Co., 813 F. Supp. 1104, 1107 (E.D. Pa. 1992). A motion to reconsider may not raise new arguments that could or should have been made in support of, or in opposition to, the original motion. See Balogun v. Alden Park Mgmt. Corp., 1998 WL 692956, at *1 (E.D. Pa. Oct. 1, 1998).

Moreover, a "motion for reconsideration is not properly grounded on a request that a court consider repetitive arguments that have been fully examined by the court." Blue Mountain

Mushroom Co. v. Monterey Mushroom, Inc., 246 F. Supp. 2d 394, 398 (E.D. Pa. 2002); see also

Ogden v. Keystone Residence, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002) (motion for

reconsideration may not be used as means to relitigate a disagreement with the court).

## IV.   DISCUSSION

### A.   Motion for Reconsideration—New Evidence

Under the second ground established by Max's Seafood Café, a court may grant a motion

for consideration based on new evidence not available to the court at the time it made its prior

ruling. 176 F.3d at 677. Such new evidence has been presented in this case. While motions to

amend an earlier judgment must be granted "sparingly," the evidence presented since this Court's

ruling of July 15, 2008 makes reconsideration appropriate because the new evidence clearly

demonstrates that Peoples intends to continue litigating his fee dispute with Langer in such a way

as to disturb the overall Linerboard counsel fee allocation. The Court next turns to the new

evidence.

On July 24, 2008, a week and a half after this Court's most recent ruling, The Legal

Intelligencer, a prominent legal periodical, published an article about the Peoples-Langer fee

dispute. In an interview for the article, "Peoples vowed to continue his court battles with Langer,

noting that he has instituted suit in the Delaware County Court of Common Pleas in which he

intends to pursue what he views as his rightful share of the Linerboard fees." Shannon P. Duffy,

Federal Judge Calls Halt to Ugly Fee Dispute, Legal Intelligencer, July 24, 2008, at 1.

On September 3, 2008, Peoples, through his counsel, served discovery requests and a

Brief Statement of Nature of Cause of Action ("Brief Statement") on Langer in the Delaware

County Court case. (Langer's Notice of New Material Bearing Upon the Pending Mot. to

7

Reconsider, Ex. 1 (Doc. No. 1041, filed Sept. 9, 2008).)  The Brief Statement outlines the theory of the Delaware County Court litigation, alleging that "Langer promised to pay to Peoples ten percent (10%) of all fees awarded in MDL 1261 to Langer and all other attorneys representing parties in the Box Sub-Class.  MDL 1261 settled in 2003 for over $202 million dollars, and Peoples now suspects that Langer and the other attorneys in the Box Sub-Class received approximately $49 million dollars in fees."  (Id. at 2 (emphasis in original).)  The Brief Statement also alleges that "Langer and affiliated attorneys had certainly received much more than the $29,400,000.00 he represented to both Peoples and [Magistrate Judge] Rueter."  (Id. at 3.)

The Brief Statement served in the Delaware County Court case on September 3, 2008 identifies the July 15, 2008 Order vacating the All Writs Act Injunction as removing the final "impediment to discovery by Peoples of the amount of fees received by Langer and others and continuing with the action to recover damages."  (Id. at 4.)  The interrogatories that accompanied the Brief Statement asked Langer to, among other requests, "[i]dentify each communication to any person, including but not limited to Plaintiff and Magistrate Judge Rueter, as to the amount of legal fees received or to be received by Langer and the other attorneys in the Box Sub-Class from MDL 1261."  (Id. at 8.)  Peoples also seeks to learn the "total amount of fees approved and received by all other attorneys in the Box Sub-Class," the method by which those fees were allocated, and the amount of money deducted for payment to Peoples.  (Id. at 9, 10, 12.)  These newly available documents reveal the broad scope of Peoples's intended state-court litigation, information that was not before this Court when it vacated the All Writs Act Injunction on July 15, 2008.  Such statements and discovery requests in the Delaware County Court case demonstrate that what this Court considered to be a personal dispute between Peoples and Langer

8

is far more than that—it is an attempt by Peoples, directly or indirectly, to force a reallocation of the fees received by the numerous attorneys who represented the Box Class members in Linerboard.

On September 8, 2008, Langer discovered, from examining the docket for the Delaware County Court action, that Peoples had filed a Complaint in the same court on December 31, 2007. (Langer's Notice of New Material Bearing Upon Pending Mot. to Reconsider 2 (Doc. No. 1041, filed Sept. 9, 2008).) This Complaint, which named Langer and other Linerboard attorneys as defendants, was withdrawn without prejudice on January 9, 2008. (Id. Ex. 2.) When the Court issued its ruling on July 15, 2008, it did not have knowledge of the filing of the Complaint or its contents, which are telling as to the relief that Peoples seeks in the current Delaware County Court suit against Langer. That Complaint alleges that Peoples is due ten percent of the overall fee awarded to the Linerboard Box Class counsel, that Langer misrepresented to Peoples and to Magistrate Judge Rueter that this overall fee was $29.4 million rather than $49 million, and that Linerboard counsel other than Langer agreed to pay and should have paid Peoples ten percent of their individual fees. (Peoples's Compl. ¶¶ 7, 15, 20, 40, 45, 142–149.)

Peoples's state-court litigation strategy, as revealed by his discovery requests, the Brief Statement, and the Complaint of December 31, 2007, later withdrawn without prejudice, centers on his theory that Langer lied to both Peoples and Magistrate Judge Rueter regarding the overall Box Class counsel fee. Pursuing this strategy would likely necessitate calling Magistrate Judge Rueter as a witness in the Delaware County Court trial, despite Peoples's claims to the contrary. (See Peoples's Resp. to the "Notice of New Material Bearing Upon the Pending Mot. to Reconsider" 4 (Doc. No. 1042, filed Sept. 12, 2008).)

The newly-available evidence, viewed cumulatively, justifies granting the current Motion for Reconsideration under the second ground of Max's Seafood Café. Accordingly, the Court concludes that its Order of July 15, 2008 vacating the All Writs Act Injunction should be reconsidered and amended.

**B.      The All Writs Act Injunction**

**1.      Jurisdiction**

The basis of this Court's jurisdiction to enter an injunction under the All Writs Act, 28 U.S.C. § 1651, preventing any action relating to the Linerboard counsel fee allocation in any court other than the United States District Court  was detailed in this Court's Memorandum of July 15, 2008. Memorandum and Order of July 15, 2008 (Doc. No. 1024); In re Linerboard Antitrust Litig., 2008 WL 2758442, at *7–10 (E.D. Pa. July 15, 2008). In sum, the All Writs Act Injunction was necessary to prevent Peoples from interfering with this Court's orders directing allocation of counsel fees in Linerboard.

Peoples's arguments that this Court lacks jurisdiction over him or over the counsel fee dispute because Peoples never entered an appearance in In re Linerboard or because Peoples v. Langer was dismissed with prejudice in light of the settlement lack merit. (See Peoples's Resp. to "Notice of New Material Bearing Upon Pending Mot. to Reconsider" 2–3 (Doc. No. 1042, filed Sept. 12, 2008); Peoples's Resp. to Mot. for Reconsideration, Civ. Action No. 99-1341 (Doc. No. 352, filed Aug. 11, 2008).) As this Court explained more fully in its Memorandum of July 15, 2008, its authority under the All Writs Act extends to both parties and non-parties. See Memorandum and Order of July 15, 2008 (Doc. No. 1024); In re Linerboard Antitrust Litig., 2008 WL 2758442, at *10 (quoting Pennsylvania v. Porter, 659 F.2d 306, 325 (3d Cir. 1981);

United States v. Int'l Bhd. of Teamsters, 266 F.3d 45, 50 (2d Cir. 2001)).  The settlement and dismissal with prejudice of the initial fee dispute litigation, Peoples v. Langer, is irrelevant to the Court's jurisdiction as the instant counsel fee dispute pertains to In re Linerboard Antitrust Litigation, MDL 1261, and the Court has jurisdiction over matters relating to the allocation of counsel fees in the underlying class action component of MDL 1261.  Order of June 4, 2004 (Doc. No. 389); In re Linerboard Antitrust Litig., 2004 WL 1240775, at *1 (E.D. Pa. June 4, 2004).  Moreover, in the Court's Order of June 4, 2004, the Court retained jurisdiction over "all issues relating to the fees and costs of counsel in this action."  Order of June 4, 2004 (Doc. No. 389); In re Linerboard Antitrust Litig., 2004 WL 1240775, at *1 (E.D. Pa. June 4, 2004).  This broad Order encompasses Peoples's pending suit, despite his claim that he is litigating an issue not yet decided by this Court—whether Langer misled Peoples and Magistrate Judge Rueter in the 2004 settlement negotiations.  (See Peoples's Resp. to the "Notice of New Material Bearing Upon the Pending Mot. to Reconsider" 1 (Doc. No. 1042, filed Sept. 12, 2008).)

This Court's authority to issue an injunction under the All Writs Act continues even after the termination of the class action component of MDL 1261.[3]  The Supreme Court has held that "[i]t is well established that a federal court may consider collateral issues after an action is no longer pending. . . . Thus, even 'years after the entry of a judgment on the merits,' a federal court could consider an award of counsel fees."  Cooter & Gell v. Hartmax Corp., 496 U.S. 384, 395–96 (1990); see also In re Bath & Kitchen Fixtures Antitrust Litig., 535 F.3d 161, 166 n.8 (3d Cir. 2008).

---

[3] The class action component will be terminated shortly following the issuance of this Memorandum and Order.

The Third Circuit addressed this question in In re Prudential Insurance Company of American Sales Practice Litigation, 261 F.3d 355 (3d Cir. 2001). Members of the class in that case argued that "the district court somehow lost the authority to enforce the Class Injunction against them once the Class Settlement was approved and the Final Order and Judgment entered." Id. at 367. The Third Circuit disagreed. As the district court had "expressly retained exclusive jurisdiction to oversee the implementation of the settlement and the judgment," a retention of jurisdiction that the Third Circuit judged "proper," the district court's "authority to enforce the Class Injunction did not end with entry of the Final Order and Judgment." Id. at 367–68. This Court similarly retained jurisdiction "over this case [MDL 1261] including jurisdiction over the Settlement Fund and its distribution, as well as all issues relating to the fees and costs of counsel in this action" in its Order of June 4, 2004. Order of June 4, 2004 (Doc. No. 389); In re Linerboard Antitrust Litig., 2004 WL 1240775, at *1 (E.D. Pa. June 4, 2004). Under In re Prudential, this Court's authority to enforce the All Writs Act Injunction will not end with the termination of the class action component of MDL 1261.

Other circuits agree with the approach of the Third Circuit in In re Prudential. In a recent Eighth Circuit case, the court held that "[w]hile a district court's jurisdiction typically ends when a case is closed and judgment entered, a district court retains ancillary jurisdiction to 'manage its proceedings, vindicate its authority, and effectuate its decrees'. . . . We affirm the District Court's determination that it had ancillary jurisdiction to enforce previous orders in this case." Jenkins v. Kan. City Mo. Sch. Dist., 516 F.3d 1074, 1081 (8th Cir. 2008) (internal citation omitted). In an attorney-fee dispute after the settlement of a class action, the Fourth Circuit held that:

[T]he district court must have continuing jurisdiction to resolve the dispute in order to

protect the continued integrity of its order approving fair and reasonable fees in the first instance. Moreover, just resolution of the issues raised by attorney's fees disputes requires both an intimate working knowledge of what occurred during the course of the class action and a uniform dispute resolution process.

Marino v. Pioneer Edsel Sales, Inc., 349 F.3d 746, 753 (4th Cir. 2003); see also Bryan v. Bell S. Commuc'ns, Inc., 492 F.3d 231, 236 (4th Cir. 2007) ("The district court clearly had subject matter jurisdiction when it issued the order finally dismissing Count A, and the district court retained jurisdiction to enforce that judgment."); In re Mooney Aircraft, 730 F.2d 367, 374 (5th Cir. 1984) ("While, as we have pointed out above, the Anti-Injunction Act is not a grant of jurisdiction, no independent basis of jurisdiction is required for a federal court to entertain an application to enjoin relitigation in state court. The jurisdiction that the federal court had when it entered its original judgment is enough to support its issuance of an injunction.").

The foregoing authority makes two things clear: this Court has jurisdiction to reinstate the All Writs Act Injunction, and it retains this jurisdiction even after the termination of the class action component of MDL 1261.

## 2.   The Appropriateness of Injunctive Relief

Injunctive relief is available in this case despite the potential recourse to a remedy at law—the Settlement and Release of December 22, 2004. Peoples argues that this remedy at law bars injunctive relief. (See Peoples's Resp. to the Mot. for a TRO & Preliminary Injunction 7–8 (Doc. No. 1044, filed Sept. 29, 2008).) The presence of a release does not prevent a court from issuing an All Writs Act injunction under the relitigation exception to the Anti-Injunction Act. In In re Prudential Insurance Company of America Sales Practice Litigation, the Third Circuit held that the release signed by class members had "both claim preclusive and issue preclusive effect."

13

261 F.3d 355, 367 (3d Cir. 2001).  Although the release provided a remedy at law, the Third

Circuit affirmed the district court's use of its All Writs Act injunction to prevent "relitigation of

the released claims" in state court.  *Id.*

       The Supreme Court has held that "[t]he relitigation exception was designed to permit a

federal court to prevent state litigation of an issue that previously was presented to and decided by

the federal court.  It is founded in the well-recognized concepts of *res judicata* and collateral

estoppel."  Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 147 (1988) (emphasis in original).

That rule is applicable to this case because Peoples seeks to relitigate the allocation of counsel

fees directed by the Court in the Linerboard case.

       Whenever a litigant is requesting an All Writs Act injunction under the relitigation

exception to the Anti-Injunction Act, that party necessarily also has the legal remedy of res

judicata.  "[A]n essential prerequisite for applying the relitigation exception is that the claims or

issues which the federal injunction insulates from litigation in state proceedings have actually

been decided by the federal court."  Id. at 148.  Despite the availability of res judicata, an

injunction may still issue under the All Writs Act when it is "necessary to prevent a state court

from so interfering with a federal court's consideration or disposition of a case as to seriously

impair the federal court's flexibility and authority to decide that case."  Atlantic Coast Line R.R.

Co. v. Locomotive Eng'rs, 398 U.S. 281, 295 (1970).

       In re Prudential and Chick Kam Choo set forth the law applicable to Peoples's argument

that an injunction may not issue because Langer possesses an adequate remedy at law.  This

authority demonstrates that Peoples's argument must fail.

       Peoples's actions and statements demonstrate an urgent need for this Court to reinstate the

All Writs Act Injunction.  Peoples has made it clear that he intends to relitigate the fee dispute in state court if not enjoined from doing so: "Peoples believes he has a right to test his legal claim in a court of proper jurisdiction and he intends to proceed whenever the impediments placed upon him by This Court expire."  (Peoples's Resp. to Mot. for Reconsideration, Civ. Action No. 99-1341 (Doc. No. 352, filed Aug. 11, 2008).)  Peoples echoed the same sentiment in his interview with The Legal Intelligencer following this Court's July 15, 2008 Memorandum and Order: "Peoples vowed to continue his court battles with Langer, noting that he has instituted suit in the Delaware County Court of Common Pleas in which he intends to pursue what he views as his rightful share of the Linerboard fees."  Shannon P. Duffy, Federal Judge Calls Halt to Ugly Fee Dispute, Legal Intelligencer, July 24, 2008, at 1.

The All Writs Act Injunction is necessary to prevent disturbing the overall allocation of the Linerboard Box Class counsel fee, a result which any litigation of the counsel fee dispute in state court could require.  Peoples argues to the contrary in his pleadings, claiming that he is seeking nothing "other than a portion of the fee earned by Howard Langer, Esquire."  (Peoples's Resp. to "Notice of New Material Bearing Upon the Pending Mot. to Reconsider" 2 (Doc. No. 1042, filed Sept. 12, 2008).)  He contends that his fee request is "total[ly] isolat[ed] from any impact upon the fees earned and received by all other counsel."  (Id. at 3; see also Peoples's Resp. to Mot. for Reconsideration 10 (Civ. Action No. 99-1341, Doc. No. 352, filed Aug. 11, 2008 ("Peoples's claim . . . [has] absolutely nothing to do with the distribution of the funds owed to the attorneys in the class action.")).)  These statements are totally undermined by the newly submitted evidence, which, taken together, demonstrates that, directly or indirectly, Peoples's actions will involve the other lawyers who represented the Box Class in Linerboard and will seek to disrupt

the fee allocation to those lawyers.

Peoples's own submissions and statements demonstrate that he is seeking ten percent of the overall fee paid to the <u>Linerboard</u> Box Class counsel.  Although Peoples has not filed a complaint in the pending Delaware County Court action, Peoples's Complaint of December 31, 2007 (withdrawn on January 9, 2008) states repeatedly that Peoples is entitled to ten percent of the overall Box Class counsel fees received in the <u>Linerboard</u> litigation and that the other counsel knew about and agreed to this fee. (Peoples's Compl. ¶¶ 7, 15, 20, 45.)  Moreover, Peoples argues that, in order to determine how much he is owed, he needs to know how much "everyone . . . received." (<u>Id.</u> ¶¶ 80, 83.)  Count Seven of the Complaint names <u>Linerboard</u> attorneys other than Langer and alleges that they "had a duty to take the initiative and deduct 10% from their fee received for their work in the box subclass part of the above class action, and forward same to Plaintiff . . . ." (<u>Id.</u> ¶¶ 137–49.)

Moreover, as part of the discovery request of September 3, 2008 in the Delaware County Court case, Peoples included a Brief Statement of Nature of Cause of Action, which states that Peoples is due ten percent of the entire fee awarded to the Box Class attorneys.  (<u>See</u> Langer's Notice of New Material Bearing Upon the Pending Mot. to Reconsider, Ex. 1, at 2–3 (Doc. No. 1041, filed Sept. 9, 2008).)  The interrogatories seek information about both the total amount of the fee received by the Box Class attorneys and the amount that each individual attorney received. (<u>Id.</u> at 8–11.)  Such discovery makes clear that Peoples's state-court litigation will implicate the overall fee allocation to the attorneys for the Box Class.

Peoples's state-court suit against Langer directly implicates the res in the MDL—the total attorney's fee awarded by the Court.  Assuming arguendo that Peoples obtains a judgment

equivalent to ten percent of the Box Class counsel fee award and recovers the entire amount from

Langer, Langer would have a remedy vis-a-vis the other Box Class counsel which would affect

the overall allocation of the counsel fee.

Accordingly, reinstatement of the All Writs Act Injunction is appropriate to prevent

relitigation of the overall Linerboard counsel fee allocation in state court and to protect this

Court's ongoing jurisdiction over the MDL res.

### C.    Peoples's Telephone Call of September 16, 2008

On September 16, 2008, Langer, through counsel, sent a letter to the Court, notifying the

Court of a telephone call from Peoples, who said, "Your judge buddy is not going to help you out

anymore. I hope you know that."[4]  Similar telephone calls and telephone messages led to the

issuance of two injunctions against Peoples by agreement in 2005.  Order of March 22, 2005

(issued but not filed); Order of September 8, 2005 (issued but not filed).  The Court dissolved

those injunctions on July 15, 2008, largely because Peoples had "not left another telephone

message on Langer's voicemail since June 29, 2006, and ha[d] had no further contact with

Langer."  Memorandum and Order of July 15, 2008 (Doc. No. 1024); In re Linerboard Antitrust

Litig., 2008 WL 2758442, at *16, *19 (E.D. Pa. July 15, 2008).  The most recent letter from

Langer's counsel is notice that Peoples has not abandoned his tactic of making threatening

telephone calls and leaving threatening telephone messages.  Nevertheless, on the present state of

the record, the Court declines to reinstate the two agreed-upon injunctions which prohibited such

conduct.  To the extent that Langer believes the latest message is threatening and violates the law,

he should report the incident to the police.

---

[4]A copy of the letter shall be docketed by the Deputy Clerk.

17

Previously, the Court was asked to refer Peoples to Chief Judge Bartle for disciplinary action based upon the threatening telephone calls. (Langer's Mot. for an Order Holding John Peoples, Esquire in Contempt, Imposing Disciplinary Sanctions Upon Him, and Referring His Behavior to Chief Judge Bartle (Doc. No. 838, filed July 5, 2006).) The Court declined to do so because, among other reasons, there had been no such telephone calls for over two years. The Court again declines, on the present state of the record, to refer Peoples to Chief Judge Bartle and leaves to Langer the question of whether he will do so himself.

## V.   CONCLUSION

In July 2008, the Court stated that the drawn-out personal quarrel between Peoples and Langer must end. The latest round of statements and submissions in the Delaware County Court and in this Court demonstrates that they did not take the Court's admonition seriously. The evidence presented since the issuance of the July 15, 2008 Memorandum and Order makes clear something that had not surfaced as of that date—Peoples seeks to recover from Langer ten percent of the counsel fee allocated to all of the attorneys in the Box Class of In re Linerboard. Such action will, directly or indirectly, disrupt the fee allocation to those attorneys and will not be tolerated. The All Writs Act Injunction is necessary to protect the fee allocation and avoid relitigation of that issue.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE LINERBOARD ANTITRUST LITIGATION | ) ) ) ) | MDL No. 1261 |
| THIS DOCUMENT RELATES TO: Civil Action Numbers 98-5055 and 99-1341 | ) ) ) ) ) | |

**FILED**

OCT − 3 2008

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

DUBOIS, J.                                             OCTOBER 2, 2008

## ORDER

**AND NOW**, this 2nd day of October, 2008, upon consideration of Motions of Liaison

Counsel Howard Langer (1) for Reconsideration of the Order of July 15, 2008, (2) for Entry of an

Order to Protect and Effectuate This Court's Judgment and (3) Alternatively, to Stay That Portion

of the Order of July 15, 2008 Providing for the Dissolution of the All Writs Act Injunction

Pending Appeal (Document No. 1025, filed July 21, 2008); Howard Langer's Supplement to

Motion to Reconsider the Order Entered July 15, 2008, or Alternatively for a Stay Pending Appeal

(Document No. 1026, filed July 23, 2008); Howard Langer's Second Supplement to Motion to

Reconsider the Order Entered July 15, 2008, or Alternatively for a Stay Pending Appeal

(Document No. 1027, filed July 24, 2008); Howard Langer's Third Supplement to Motion to

Reconsider the Order Entered July 15, 2008, or Alternatively for a Stay Pending Appeal

(Document No. 1028, filed July 28, 2008); John F. Peoples, Esquire's Response to the Motions

Filed by Howard Langer, Esquire (Who Refer to Himself Inappropriately as *Liaison Counsel*) (1)

for Reconsideration of the Order of July 15, 2008, (2) for Entry of an Order to Protect and

Effectuate This Court's Judgment and (3) Alternatively, to Stay That Portion of the Order of July 15, 2008 Providing for the Dissolution of the Court's All Writs Act Injunction Pending Appeal (Civil Action 99-1341, Document No. 352, filed August 11, 2008); Howard Langer's Notice of New Material Bearing Upon the Pending Motion to Reconsider (Document No. 1041, filed September 9, 2008); John F. Peoples's Response to the "Notice of New Material Bearing Upon the Pending Motion to Reconsider" (Document No. 1042, filed September 12, 2008); Howard Langer's Motion for Temporary Restraining Order and Preliminary Injunction (Document No. 1043, filed September 12, 2008); and John F. Peoples's Response to the Motion for a Temporary Restraining Order and Preliminary Injunction (Document No. 1044, filed September 29, 2008), for the reasons set forth in the attached Memorandum, **IT IS ORDERED** as follows:

1.  Motion of Liaison Counsel Howard Langer for Reconsideration of the Order of July 15, 2008 (Document No. 1025, filed July 21, 2008) is **GRANTED**;

2.  Motion of Liaison Counsel Howard Langer for Entry of an Order to Protect and Effectuate This Court's Judgment (Document No. 1025, filed July 21, 2008) is **DENIED AS MOOT**;

3.  Motion of Liaison Counsel Howard Langer to Stay That Portion of the Order of July 15, 2008 Providing for the Dissolution of the All Writs Act Injunction Pending Appeal (Document No. 1025, filed July 21, 2008) is **DENIED AS MOOT**;

4.  Howard Langer's Motion for Temporary Restraining Order and Preliminary Injunction (Document No. 1043, filed September 12, 2008) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** as follows:

1.   The deputy clerk shall docket the letter from Robert J. LaRocca, Howard Langer's counsel, of September 16, 2008.

2.   The All Writs Act Injunction (Document No. 408, filed July 6, 2004) is **REINSTATED**.

   The Court having retained jurisdiction over MDL 1261 "including jurisdiction over the Settlement Fund and its distribution, as well as all issues relating to the fees and costs of counsel" by Order dated June 4, 2004, **IT IS FURTHER ORDERED** that all attorneys who participated in any way in MDL 1261 including, but not limited to, John F. Peoples, Esquire, and all persons acting in their behalf, are hereby **ENJOINED** from taking any further action relating to the allocation of fees in MDL 1261, or the action of liaison counsel in connection therewith, in any court or forum other than the United States District Court for the Eastern District of Pennsylvania.  The injunction is necessary to preserve the Court's jurisdiction over all matters relating to the award and allocation of counsel fees in MDL 1261.  See In re Synthroid Marketing Litigation, No. 97-6017 (N.D. Ill. Aug. 22, 2003).

                                              **BY THE COURT:**

10/2/08  faxed
Brown, Leveridge, LaRocca,
      Marcone, Langer

                                        Jan E. DuBois
                                        **JAN E. DUBOIS, J.**

10/3/08
e-mailed
 - H Langer
 - S. Brown
 - R. Leveridge

```
************ COMM. JOURNAL ***************** DATE OCT-02-2008 ***** TIME 15:29 ***** P.01

           MODE = MEMORY TRANSMISSION        START=OCT-02 15:21    END=OCT-02 15:29

           FILE NO.=766

STN     COMM.      ONE-TOUCH/    STATION NAME/TEL NO.                    PAGES     DURATION
NO.                ABBR NO.

001     OK         ☎             92153205703                            023/023   00:04:35




               -                      - ***** -                         - ***********
************************************** -
```

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### FAX COVER SHEET


**DATE:**    October 2, 2008

**TO:**    Rober J. LaRocca, Esquire 215-238-1968
Howard Langer, Esquire 215-320-5703
Frank J. Marcone, Esquire 484-442-8306

**FROM:**    Andrew J. Follmer, Deputy Clerk to Honorable Jan E. DuBois
**Phone:**    267-299-7339
**Fax No.:**    215-580-2141

**Message:**

**Total Number of Pages (Including Cover Sheet):**    XX

```
MODE = MEMORY TRANSMISSION                START=OCT-02 14:33    END=OCT-02 14:49

FILE NO.=763

STN    COMM.    ONE-TOUCH/    STATION NAME/TEL. NO.                    PAGES      DURATION
NO.             ABBR NO.

001     OK        ☎            92156552240                            023/023    00:08:35
002     OK        ☎            912028870689                           023/023    00:06:55
```

```
*********************************** -       - ***** -              - *********
```

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### FAX COVER SHEET

**DATE:**   October 2, 2008

**TO:**   Stephen Brown, Esquire - 215-655-2240
Richard Leveridge, Esquire - 202-887-0689

**FROM:**   Andrew J. Follmer, Deputy Clerk to Honorable Jan E. DuBois
**Phone:**   267-299-7339
**Fax No.:**   215-580-2141

**Message:**

**Total Number of Pages (Including Cover Sheet):**     XX

```
         MODE = MEMORY TRANSMISSION          START=OCT-02 14:57   END=OCT-02 15:17

         FILE NO.=765

  STN    COMM.   ONE-TOUCH/   STATION NAME/TEL NO.                PAGES      DURATION
  NO.            ABBR NO.

  001     OK       ☎          92152381968                        022/022    00:03:59
  002     634      ☎          92154196546                        000/022    00:00:00
  003     B-OK     ☎          94844428306                        022/022    BATCH
```

*********************************** –     – **** –          – ********

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## FAX COVER SHEET

**DATE:**     October 2, 2008

**TO:**       Rober J. LaRocca, Esquire 215-238-1968
              Howard Langer, Esquire 215-419-6546
              Frank J. Marcone, Esquire 484-442-8306

**FROM:**     Andrew J. Follmer, Deputy Clerk to Honorable Jan E. DuBois
**Phone:**    267-299-7339
**Fax No.:**  215-580-2141

**Message:**

**Total Number of Pages (Including Cover Sheet):**     XX